**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JONATHAN and SHARRON EDWARDS,** ) <br> **and VILMA HALL,** ) <br> ) <br>    **Plaintiffs,** ) <br> ) <br> vs. ) <br> ) <br> **ACCREDITED HOME LENDERS, INC.,** ) <br> **LENDER'S FIRST CHOICE, INC., and** ) <br> **LENDER'S FIRST CHOICE AGENCY** ) <br> **OF ALABAMA, INC.,** ) <br> ) <br>    **Defendants.** ) | **CIVIL ACTION NO. 07-0160-KD-C** |

## ORDER

This matter is before the court on the motion for summary judgment as to the claims of Sharron and Jonathan Edwards filed by defendant Lender's First Choice Agency, Inc. and Lender's First Choice Agency of Alabama, Inc. (Lender's First) (doc. 73), plaintiffs' response (doc. 89), and defendants' reply (doc. 100), plaintiff' sur-response (doc. 140) and defendants' sur-reply (doc. 148). Upon consideration, and for the reasons set forth herein, the motion for summary judgment is GRANTED.

I.    Background

In June 2006, plaintiffs obtained a residential real estate mortgage and loan with defendant Accredited Home Lenders, Inc., (Accredited) which was closed by Lender's First as agent for Accredited. At closing, Lender's First charged plaintiffs $88.00 to record their mortgage and deed. This charge was listed on the Department of Housing and Urban Development Settlement Statement (HUD Settlement Statement). Plaintiffs assert that they were overcharged by $35.00 and Lender's First asserts that the overcharge was actually $12.50

because a deed was also recorded with the mortgage.[1]  Approximately nine months after the closing, and approximately one month after Lender's First was served with the lawsuit, Lender's First refunded the $12.50 to the plaintiffs from its escrow account.

In their complaint, plaintiffs allege that Lender's First violated § 8(b) of the Real Estate Settlement Procedures Act (RESPA) codified at 12 U.S.C. § 2706(b). Plaintiffs allege that the $88.00 recording fee was padded and marked-up in excess of services actually performed and that by retaining plaintiffs' funds in its escrow account before disbursing it to plaintiffs, Lender's First accepted a portion of a charge other than for services actually performed.

Previously Lender's First moved to dismiss plaintiffs' recording fee claim, which was denied. The court found that there was a "factual dispute as to whether more than the recording fee was actually intended to be retained by Lender's" and "whether additional services were performed by Lender's." (doc. 61). After the motion for summary judgment was filed, plaintiffs amended their complaint to include a class claim as to the recording fee and to add plaintiff Vilma Hall The parties do not dispute that the second amended complaint did not change the Edwards' individual claim.

II.     Findings of Fact[2]

---

[1] The total amount paid to the Probate Court to record the mortgage was $150.50 (doc. 140, Exhibit 4). The payment breaks down to a mortgage tax of $97.50, an "S.R. Fee" of $2.00, a surcharge of $10.00, and a recording fee of $41.00. Adding the last three totals $53.00 which plaintiffs claim is the actual amount of the recording fee instead of $88.00 and thus they were overcharged by $35.00. Defendants argue that the actual amount paid to the Mobile County Probate Court was $75.50 (doc. 73, pp. 43, 45), because a deed was also recorded, thus creating a difference of $12.50 which was refunded to plaintiffs.

[2] The court must construe all evidence and factual inferences in a light most favorable to the plaintiffs. Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004) citing Burton v. City of Belle Glade, 178 F. 3d 1175 1187 (11th Cir. 1999) (When ruling on a motion for summary

1. Plaintiffs Jonathan and Sharron Edwards are residents of Alabama and consumers who obtained a residential real estate mortgage on their home with Accredited Home Lenders, Inc..

2. Accredited, a California corporation doing business in Alabama, acquires residential mortgage loans.

3. Lender's First Choice Agency, Inc. is a Florida corporation and controlling parent of Lender's First Choice Agency of Alabama, Inc., an Alabama corporation (hereinafter Lender's First).  These defendants served as the closing agent on the Edwards' residential mortgage.

4. Plaintiffs' loan was closed on June 16, 2006.  Recording the mortgage is part of the settlement services provided by Lender's First in closing plaintiffs' mortgage with Accredited. Lender's First charged the Edwards $88.00 for the recording fee to record their mortgage after their loan was closed.

5. The recording fee was actually $75.50 according to the check issued by Lender's First to the Mobile County Probate Court.  In addition to recording plaintiffs' mortgage, a deed was also prepared and recorded.  Lender's First recalculated the recording fees after the loan was closed and all documents had been signed.

6. The difference between the amount charged by the Probate Court and the amount paid to Lender's First is $12.50.

7. Lender's First returned the $12.50 to plaintiffs approximately nine months after the loan closed and approximately one month after Lender's First was served with the lawsuit.

8. Lender's First never removed the $12.50 from the escrow account until it was sent to

---

judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.").

plaintiffs.  The escrow bank account is in a separate bank from Lender's First's operating account. (doc. 73, Exhibit 1, Ledger for Edwards account).

9. Lender's First's policy manual indicates that calculating estimated recording fees for the preliminary HUD Settlement Statement would "be set to default to a recording fee charge equal to one 30 page document.  In most cases this should be more than sufficient to record one document.  Do not change this amount.  If more than one document is to record, the Closer must calculate additional recording fees and add it to HUD line 1201." (Docs. 140, 132, Exhibit 8).

10.  Lender's First performed the following services in connection with recording plaintiffs' mortgage and deed and performs the same services for other borrowers:

> a. A Lender's First "closer" assigned to the loan uses a computer program to calculate the average recording fees based on a 30-page mortgage document and includes this amount on the preliminary HUD settlement statement.
> 
> b. The lender, in this case Accredited, prepares a package of documents for the closing which includes the mortgage to be recorded and provides those to Lender's First's "closer" before the closing.  If received in time, Lender's First will examine the mortgage and if necessary re-enter the information into the computer program and determine the exact amount of the recording fee and revise the settlement statement.  If there is not enough time, the estimated recording fee is charged at closing.
> 
> c. Lender's First's records indicate that the plaintiffs' package was received, i.e., downloaded, the same day as the plaintiffs' original signing of the documents. Lender's First's signing agent did not have time to revise the recording fee charge for the HUD settlement statement.

      d. The Lender's First assigned closer receives the signed documents after the closing from the signing agent and recalculates the recording fee based on the actual documents to be recorded including the signed mortgage.

      e. The signed mortgage is also reviewed by the Post-Closing Department to be sure that nothing is stricken and pages are legible.  The mortgage is then delivered to the Recording Department where information from the actual document is entered in the computer to calculate the amount for the check to the appropriate government entity for recording and the check is drawn in that amount.

      f.  Lender's First's recording department will print a label, obtain and address an envelope, place the check, the mortgage and other documents to be recorded in the envelope, and place the envelope in a pick-up box.

      g. Lender's First's employees may answer phone calls and questions from the government entity to which the documents have been mailed.

      h.  If the check is not sufficient, Lender's First does not collect additional monies from the borrower and also must repeat this procedure.

      i. In this case, in addition to the above, Lender's First had to prepare a deed for the Edwards and then had to obtain signatures on two correction deeds because of naming errors.  The corrected deed was recorded with the mortgage and Lender's First arranged for and prepared the corrected deed for recording.

(Docs. 73, 100, defendants' reply)

11.  All monies received from any source at the closing are placed in Lender's First's escrow account and monies are disbursed from that account to parties such as the borrower, the

title insurer, etc. (Id.).

12. At the beginning of each month, the closers are instructed to go through each trust account, a process called "running your trial balance", find monies to be refunded to the borrower, and refund the money. Some funds are held back for other reasons and the closer must distinguish between a holdback and an overage. The process takes longer when the closing agents are busier which is generally at the end of the month. The process may take up to four or five months but not up to a year (doc. 100). It was unusual for the process to take as long as it did to refund the plaintiffs' $12.50 (doc. 100).

13. In November 2006, Lender's First began to use an automated program which generates a list and triggers the disbursement department to refund any overages when the recorded documents are returned (docs. 100, 140)

14. A sample of twenty-five Lender's First customers,[3] showed that six consumers were charged the actual cost for recording, fourteen consumers were refunded the overage, four consumers were refunded the overage as part of a larger disbursement or refund including other overages, and one consumer's overage for recording was offset to an undercharge for the county taxes (doc. 100-3, Attachment B, Letter from defense counsel to plaintiff's counsel; doc. 147).

15. The written Standard Operating Procedure for Lender's First states that "[i]f there are more funds than needed for the requested check(s), Recording Disburser leaves the remaining funds on Hold for future recording use or refund to appropriate party once recording

---

[3] As part of class discovery, plaintiffs selected twenty-five random consumer loan closing files from Lender's First for borrowers whose loans with Accredited were closed by Lender's First. Although the class claim had not been plead at the time of the motion for summary judgment, the samples are relevant because plaintiffs argue that intent is viewed from the totality of the circumstances.

confirmation has been received." (doc. 100-3, p. 3, Attachment B, Letter from defense counsel to plaintiffs' counsel)

III.    Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[4] The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

Once the moving party has satisfied its responsibility, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she

---

[4] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

has the burden of proof, 'the moving party is entitled to summary judgment." Id. quoting Celotex Corp., v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) cert denied, 507 U.S. 911, 113 S.Ct. 1259 (1993) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), cert denied, 543 U.S.1081,125 S.Ct. 869 (2005).

IV.   Analysis

Lender's First raises two arguments.  First, that it never accepted and did not intend to accept or retain any recording fee overcharge because the $12.50 was kept in a non-interest bearing escrow or trust account, separate from its operating account, and was never disbursed to Lender's First.  Second, Lender's First argues that assuming it did accept the $12.50, it performed additional services in relation to the recording of plaintiffs' mortgage and deed.

A.   Accepting funds held in the escrow account

Lender's First argues that it functions as an escrow agent, a third party to the loan between plaintiffs and Accredited Home Lenders, and because the $12.50 was held in an escrow account and disbursed to plaintiffs, albeit approximately nine months later, Lender's First  never accepted or retained the funds as contemplated by RESPA § 8(b). Lender's First asserts that it

has a policy to disburse overcharges for recording after return of the recorded documents from the recording official.  Lender's First states that it held all loan funds in escrow in a separate non-interest bearing bank account, disbursed other funds as necessary to close the loan transaction, never disbursed the $12.50 to its operating account, and thus never "ended up with" a payment which is a necessary element for violation of RESPA § 8(b).  Lender's First also points out that plaintiffs did not respond to this argument and therefore, do not dispute that Lender's First never accepted, i.e., was paid, the $12.50.  Lender's First argues that these facts establish that it never intended to accept the funds.

Plaintiffs argue that whether Lender's First accepted the overage is a question of intent to be inferred from a totality of the circumstances and is a factual dispute for the jury.  As to the totality of the circumstances, plaintiffs raise the following arguments.

    1.    <u>Written policy to collect over-estimated recording fees</u>

Plaintiffs argue that as part of its scheme or intent to accept the overcharges, Lender's First has a written policy instructing its employees to overestimate the number of pages for mortgages when calculating the recording fee for the preliminary HUD Settlement Statement and then directs its employees not to recalculate the number of pages at the time of closing to insure an overage will occur.  Plaintiffs base this argument on the following form:

> **IMPORTANT NOTE ABOUT RECORDING FEES**
>
> The HUD will be set to default to a recording fee charge equal to **one 30-page document.**  In most cases this should be more than sufficient to record <u>ONE DOCUMENT</u>.  **DO NOT CHANGE THIS AMOUNT**.
>
> If <u>more</u> than one document to record, the Closer *must calculate additional recording fees* and **add it to HUD line 1201**.

(Doc. 140, p. 3) (emphasis in original); (see also Doc. 132, Exhibit 8).  Plaintiffs argue that the

phrase - "'do not change this amount' demonstrates a company policy not to charge the actual amount, even when the actual recording fee is known at the time the loan is closed" and that Lender's First has a policy of intentionally collecting excess sums.

Lender's First replies that the policy explains how the $88.00 estimate is calculated but is not evidence of intent to retain an overage. Lender's First argues that this does not change the fact that the $12.50 was never disbursed from the escrow account. It also argues that the policy does not preclude recalculating the fees and revising the HUD Settlement Statement when there is sufficient time as evidence by the six consumer files wherein the exact amount of the recording was charged. (doc. 147, Exhibit 1).

The court has reviewed this evidence and raised all inferences therefrom in the light most favorable to the plaintiffs. However, the court finds that plaintiffs' interpretation, when viewed in conjunction with the other undisputed evidence, is unsupported. Plaintiffs argue that "[w]hile Mr. Petrucelli [William R. Petrucelli, Lender's First's corporate representative] testified that sometimes the actual amount is calculated and substituted for the estimated charge . . . [Lender's First's] written policy would seem to prevent this practice." (doc. 140). The parties do not dispute that an <u>estimated</u> HUD Settlement Statement was prepared for the plaintiffs' closing. The phrase "Do not change this amount" refers to not changing thirty pages as the <u>estimate</u> to be sure that sufficient funds are collected for recording. When considered in conjunction with the undisputed testimony that the recording fee is recalculated before closing if there is sufficient time[5] and the six random samples showing that the exact fee was charged at closing, the

---

[5] At deposition, Petrucelli testified as follows:

Question:     Okay. But it's Lender's First Choice policy, nevertheless, to put in this estimate in

instruction could not reasonably be interpreted to mean that the employees are instructed to never change the page amount when calculating the <u>final</u> HUD Settlement Statement. Moreover, plaintiffs do not provide any evidence to rebut Petrucelli's testimony that the closing agents, if not pressed for time, will recalculate the pages and the actual recording fee when they receive the loan packet which contains the actual mortgage document.

The next line "If more than one document to record, the Closer must calculate additional recording fees and add it to HUD line 1201", indicates that in some cases there are other documents to record. This was true as to the plaintiffs because a four page deed was recorded and part of the $88.00 fee was used for that purpose. The only reasonable interpretation of this policy statement shows that it explains a procedure to estimate and collect expected expenses for the borrower, but not a policy of overcharging with the intent to accept funds for which no services were performed.

     2.     <u>No functional timetable and delay of the Edwards' refund</u>

Next, plaintiffs argue that intent to accept the overage is shown because Lender's First's policy has no functional timetable for refunding overcharges. Plaintiffs argue that because the policy instructs its employees to review the escrow and disburse overcharges when they have time, there is a discrepancy between Lender's First's actual procedure and its position that it always refunds the overcharges. Plaintiffs rely upon Petrucelli's deposition wherein he testified

---

          the final HUDs before they go to the Notary?
. . .
Answer:    No, that's not the policy. If we have an opportunity to correct it and fix it, we do so - - with the right number.

(Doc. 140-2, p. 42, deposition page 164).

that the loan closers are instructed to run a trial balance of their escrow accounts at the beginning of the month "when its not as busy as the end of the month" and make any refunds when they can. Plaintiffs also argue that Lender's First's failure to refund their overage until about one month after being served with the lawsuit is also evidence of its intent. Plaintiffs argue that from Lender's First's admission that the lawsuit made it aware of plaintiffs' funds in escrow, the delay in the refund, and the lack of any policy requiring refunds on a stated basis, a jury could reasonably find that Lender's First's refund was a "self serving attempt to return ill-gotten gains only after LFC 'got its hands caught in the cookie jar'". (doc. 140).

Lender's First replies that the mechanism for refunding overages was explained by Petrucelli who personally participates in the process and instructs the employees to review their escrow balances either immediately or at the end of the month in a "trial balance" and make disbursements. Lender's First also argues that fourteen of the twenty five sample files show by direct entry that refunds were made and the other accounts included the disbursements with other overages but for the six files wherein the exact amount was charged. Lender's First also argues that the delay of refund to the Edwards is not evidence that it accepted their overage because it was kept in an escrow account, which plaintiffs do not dispute. Lender's First argues that at best there may have been negligence in failing to find the out-of-balance trial balance.

Boiling this down, plaintiffs assert that the lack of a date certain to disburse overcharges is evidence that the company intended to retain or accept any overcharges.[6] However, what

---

[6] Plaintiffs also allege that Vilma Hall did not receive a refund from Lender's First as additional evidence of it's intent to accept the overages. Lender's First replies that the summary judgment motion does not apply to Hall who was not a plaintiff when the motion was filed. Lender's First also argues that the procedures are different for her loan because she borrowed from Ameriquest Mortgage Company who requires use of recording service, U.S. Recording,

12

Lender's First intended to do at a later date is not the issue in this case.  Plaintiffs claim is that Lender's First violated 12 U.S.C. § 2607 by <u>accepting</u> money without performing any services. As discussed *infra*, if Lender's First did not accept the money, there is no liability under 12 U.S.C. § 2607.

   3. <u>Lender's First's unsustainable interpretation of RESPA</u>

Plaintiffs argue that Lender's First "conjures from thin air the notion that Plaintiffs must prove, not only that a fee was collected other than for services rendered, but that [Lender's First] had the intent to keep the fee."  Plaintiffs argue that collecting the fee is enough to make Lender's First liable for violating §8(b) and its own accounting procedures, <u>i.e.</u>, refunding the fee at some point in time, does not erase the fact that marking up the fee unnecessarily increased the cost of the settlement service and because the funds were part of the loan resulted in plaintiffs paying interest on the $12.50 for the next thirty years.  Plaintiffs also argue that RESPA was enacted to protect the consumer from the collection of unnecessary fees because such fees become part of the finance charge.

   RESPA § 8(b), captioned "Splitting Charges", provides that

> No person shall give and no person shall <u>accept</u> any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage

---

and that since the procedures are different, the fact that she did not receive a refund from Lender's First cannot be used as evidence to rebut Lender's First's intent to refund the Edwards' overage.  Petrucelli's deposition testimony supports Lender's First argument that a different procedure was used to record loans made with Ameriquest.  Therefore, viewing the evidence in the light most favorable to the plaintiffs, the fact that Hall may not have received a refund when a different procedure is employed does not support plaintiffs' argument that Lender's First intended to keep their overage.

loan other than for services actually performed.

12 U.S.C. § 2607(b) (emphasis added).

To "accept" any portion of any charge for recording plaintiffs' mortgage and deed, Lender's First would have to possess or take control over plaintiffs' funds.  Despite plaintiffs argument that a jury must determine from all the circumstances whether Lender's First intended to accept plaintiffs' funds and returned their money only after being sued, plaintiffs have failed to present any evidence to rebut Lender's First's evidence that it never disbursed the $12.50 from the escrow account to itself.  To "escrow" means to deliver a writing, deed, money, stock, etc., to a third person to hold until a contingency or condition is met and then deliver the escrow to the grantee, promisee or obligee. American National Bank of Jacksonville v. Federal Deposit Ins. Corp., 710 F. 2d 1528, 1541 n.15 (11th Cir. 1983) (citation omitted); see also Hillcrest Golf and County Club v. Patterson, 217 F. Supp. 176 (N.D. Ala. 1963).  There is no evidence that Lender's First ever disbursed the $12.50 from the escrow account and thus no evidence that it ever accepted the $12.50, i.e., that it accepted any portion, split or percentage any charge made or received for the rendering of a real estate settlement service.

In Krupa v. Landsafe, Inc., 514 F.3d 1153, 1156-1157 (11th Cir. 2008), the court held that for the premise that the defendant must "end up with something" in order to violate RESPA.  In Krupa, defendant Countrywide charged a $35.00 credit report fee to each borrower at closing but Landsafe only charged Countrywide $25.00 for the report.  Plaintiffs argued that the $10.00 difference was an illegal markup.  Countrywide paid the entire $35.00 to Landsafe as a method of compensating it for providing credit reports on loans which did not close.  The court found that

14

> [b]ecause the $35.00 that each plaintiff paid Countrywide for the credit report was in turn paid over in full by Countrywide to Landsafe, there was no splitting of the fee nor did anyone end up with any part of the charge "other than for services actually performed." 12 U.S.C. § 2607(b). Landsafe provided the credit reports, and it received the entire amount that the plaintiffs were charged for those reports. There was no forbidden markup.

Krupa, 514 F.3d at 1157. In this case, the recording fee overage was held in an escrow account before being refunded to the Edwards, thus, Lender's First did not "end up with any part of the charge other than for services actually performed."

Therefore, viewing all facts and inferences in the light most favorable to the plaintiffs, the court finds that no reasonable jury could find from the facts before this court that Lender's First accepted plaintiffs' funds which were held in escrow until they were refunded.. The court will not disrupt the long-standing practice of allowing third parties to escrow funds for loan closings by finding that holding funds in a separate bank account designated as an escrow account is tantamount to accepting the funds or indicative of an intent to accept or retain the funds in violation of RESPA § 8(b).

      B.    <u>Services actually performed</u>

Lender's First argues that assuming it has "accepted" the plaintiffs' funds, the plaintiffs have not argued that it has no performed services in relation to the original recording of plaintiffs' mortgage or that it did not perform additional services including services performed in relation to the deed and two corrected deeds. Lender's First argues that because it has performed settlement services for plaintiffs, they cannot claim or assert that no services were performed in return for the alleged overage of $12.50, thus there is no violation of RESPA § 8(b).

Lender's First also asserts that plaintiffs did not plead that Lender's First was fully compensated for services performed in relation to the recording fee by the payment of other fees

15

(the closing fee, abstract fee and title insurance commission) and cannot raise this allegation for the first time in a response to summary judgment.  Lender's First asserts that this argument is simply a repackaging of the argument that fees which exceed the reasonable value of services provided violate RESPA § 8(b) and is based upon the Department of Housing and Urban Development's 2001 Statement of Policy (HUD-1 SOP)[7] which has been rejected by the Court of Appeals for the Eleventh Circuit.[8]  Lender's First argues that claiming that compensation received for other fees compensated Lender's First for services performed as to recording the mortgage is actually a claim about the subjective size of the total compensation and that because RESPA § 8(b) is not a rate regulation statute whether a total fee is unreasonable or excessive is not a matter for RESPA.

Plaintiffs respond that Lender's First has been fully compensated for services related to recording the mortgage by other fees charged - the closing fee, title insurance commission and the abstract fee - and that charging a duplicative fee is the same as an unearned fee and violates RESPA § 8(b).  Plaintiffs argue that facts establishing this duplicative compensation provide a basis from which a jury could conclude that the recording fee mark-up violates the section.

---

[7] Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53,052 (Oct. 18, 2001) (codified at 24 C.F.R. Pt. 3500).

[8] Lender's First relies upon the decisions in Friedman v. Market Street Mortgage Corporation, 520 F.3d 1289 (11th Cir. 2008); Williams v. Countrywide Home Loans, 2008 WL 2609339 (11th Cir. July 03, 2008); Morrisette v. Novastar Home Mortg., Inc., 2008 WL 2610550, (11th Cir. July 03, 2008) and Moody v. Commonwealth Land Title Ins. Co., 2008 WL 2610765 (11th Cir. July 03, 2008).  Lender's First points out that in all three cases the Circuit Court affirmed the dismissals because the plaintiff plead "that they were charged an inflated fee for a service that was indisputably provided". Id.

Plaintiffs rely upon HUD regulations, specifically 24 C.F.R. § 3500.14(c) which states that a "charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates [§ 8(b)]."[9]

In their complaint, plaintiffs alleged that the recording fee overcharge was a charge "other than a fee for services actually performed" which the Eleventh Circuit has equated to an allegation that "no services" were performed to justify retaining a portion of the fee.[10] Sosa v. Chase Manhattan Mortg. Corp., 348 F.3d 979, 983 (11th Cir. 2003) ("What is missing is an allegation that the portion of the charge that Chase retained was accepted 'other than for services actually performed,' i.e., that Chase performed no services that would justify its retention of a portion of the fee."); Krupa v. Landsafe, Inc., 514 F.3d 1153, 1156-1157 (11th Cir. 2008); see also Friedman v. Market Street Mortgage Corporation, 520 F. 3d 1289, 1298 (11th Cir. 2008) (holding "that subsection 8(b) requires a plaintiff to allege that no services were rendered in exchange for a settlement fee[.]").

However, despite this allegation in the complaint, the plaintiffs do not now dispute

---

[9] Plaintiffs also rely on the decision by U. S. District Judge William H. Steele in Mallory v GMS Fundinc, LLC, Civil Action No. 07-680, slip op. (S.D. Ala. July 8, 2008). However, that case is factually dissimilar, and as Lender's First points out, was decided at the motion to dismiss stage when the court must accept as true the allegation that the defendant had been fully compensated. Mallory plead that she was charged a $90.00 recording fee but the actual cost was $50.50 and that "U.S. Title retained the balance as an unearned fee". (doc. 57, ¶ 25).

Mallory also specifically plead that "U.S. Title charged a settlement or closing fee and also earned a commission on the legal portion of the title insurance charge that fully compensated it for all services that it either performed or arranged regarding the instant transaction including those complained of [in paragraph 25] above." (Id. ¶ 26). However, there is no similar allegation in the Edwards' complaints now before the court.

[10] In Count II, plaintiffs claim, *inter alia*, that "[i]n connection with Plaintiffs' loan, [Lender's First] did accept a portion, split or percentage of a charge other than for services actually rendered." (doc. 9, ¶ 44; doc. 122, ¶ 37).

Lender's First's explanation of the services actually performed by its employees in conjunction with recording plaintiffs' mortgage, including the additional services performed in preparation and signing of a deed and two correction deeds.[11]  Thus, plaintiffs do not dispute that services were actually performed by Lender's First.  Instead, plaintiffs argue for the first time in response to the motion for summary judgment that the settlement services performed by Lender's First as delineated in its motion for summary judgment were fully compensated by other surcharges shown on the HUD Settlement Statement as part of compensation for its duties as closing agent and title agent: specifically the closing fee, abstract fee, and the title insurance commission.

The court has reviewed the first amended complaint and the second amended complaint and neither contain an allegation that Lender's First was compensated for services related to the recording fee by the collection of other fees.  The second amended complaint in the section captioned "Vilma Hall's Loan", does allege that a closing fee was collected - "As with the

---

[11] Plaintiffs also plead that Lender's First "engages in a pattern and practice of charging fees, ostensibly for 'recording fee,' which are in excess of the actual amount of the [recording fee] and services actually performed." (doc. 9, ¶ 25; see also doc. 122, ¶ 18 "As a result, [Lender's First] engages in a pattern and practice of charging fees, ostensibly for 'recording fees,' which are in excess of the actual cost of the recording.")   However, the Eleventh Circuit in Friedman v. Market Street Mortgage Corporation, 520 F. 3d 1289, 1296 (11th Cir. 2008), held as follows:

> The Friedman I opinion expressly declined to decide whether a settlement service provider is liable under subsection 8(b) of RESPA for charging a fee that is excessive in relation to services or goods actually rendered.  We now take up that issue. As with the Second, Fourth, Seventh, and Eighth Circuits, we hold that subsection 8(b) does not govern excessive fees because it is not a price control provision.

Id. at 1296.  The court further explained that "we hold today that subsection 8(b) requires a plaintiff to allege that no services were rendered in exchange for a settlement fee[.]" Id. at 1298.  Thus to the extent that plaintiffs argue that the recording fee was excessive but do not dispute that services were actually performed, they do not state a claim under RESPA.

Edwards loan, LFC collected from Ms. Hall a 'closing fee' in the amount of $450.00 as compensation for the services it provided in connection with the loan."(doc. 122).[12] But there is no allegation that Lender's First was compensated for the services it performed in connection with recording the deed and mortgage by payment of the $450.00 closing fee.

In Gilmour v. Gates, McDonald and Co., 382 F. 3d 1313 (11th Cir. 2004), the Eleventh Circuit explained that the liberal pleading standard for civil complaints mandated by Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S. Ct. 992 (2002), "'does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stated'" and that "plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Id. at 1314-1315. Therefore, plaintiffs cannot raise this issue or this argument for the first time in their response to the motion for summary judgment.

Moreover, plaintiffs' argument that a duplicative fee is a violation of RESPA is based upon 24 C.F.R. § 3500.14(c) which is the codification of the Department of Housing and Urban Development's 2001 Statement of Policy (HUD-1 SOP).[13] Plaintiffs argue that the HUD-1 SOP was recognized with approval by the Eleventh Circuit in Busby v. JRHBW Realty, 513 F. 3d 1314 (11th Cir. 2008). However, the court in Friedman, 520 F. 3d 1289, which was decided two

---

[12] Both complaints allege that Lender's First "was compensated for the tasks it actually performed in connection with the issuance of the title insurance policy through other fees imposed upon the Plaintiffs, including but not limited to the closing fee ($450.00), 'abstract' fee ($175.00) and the commission LFC receives as title insurance agent." But plaintiffs do not raise this allegation as to the recording fee.

[13] Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53,052 (Oct. 18, 2001) (codified at 24 C.F.R. Pt. 3500).

months after Busby, rejected the same interpretation of the HUD-1 SOP that plaintiffs cite and held that it would not defer to the HUD-1 SOP and explained as follows:

> Consistent with the holdings of our sister circuits, we find that the language of subsection 8(b) precludes the interpretation [of the HUD-1-SOP] urged by the Friedmans. Subsection 8(b) prohibits the charging of fees "other than for services actually performed." As explained by the Second Circuit: "[N]othing in the language authorizes courts to divide a 'charge' into what they or some other person or entity deems to be its 'reasonable' and 'unreasonable' components. Whatever its size, such a fee is 'for' the services rendered by the institution and received by the borrower." Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d 49, 56 (2d Cir.2004). Because the language is clear and unambiguous, "[t]here is not enough play in the statutory joints to allow HUD to impose its own 'interpretation' under the aegis of Chevron." Krzalic v. Republic Title Co., 314 F.3d 875, 881 (7th Cir.2002).

Id. at 1297. Therefore, even were the recording fee a duplicative fee, charging such a fee would not violate RESPA § 8(b) under Eleventh Circuit precedent because it would be an over-charge rather than a fee "other than for services actually performed.".

V.     Conclusion

For the reasons set forth herein, plaintiff has failed to show a genuine material factual dispute with respect to whether Lender's First accepted the excess recording fee and whether it actually performed services in relation to recording plaintiffs' documents. Accordingly, defendant Lender's First's motion for summary judgment (doc. 73) is **GRANTED**.

**DONE** and **ORDERED** this the 29th day of July, 2008.

 s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**